IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00135-CR

 

Trent Archie,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 12th District
Court

Walker County, Texas

Trial Court No. 22768

 



Opinion



 








            A jury convicted Trent
Archie of murder.  The trial court sentenced him to forty years in prison.  On
appeal, he challenges: (1) the denial of his motion for mistrial; (2) the
admission of testimony and evidence from a jailhouse informant; and (3) the legal
and factual sufficiency of the evidence.  We reverse and remand.

 

 

 

LEGAL SUFFICIENCY

            In issue three, Archie
challenges the legal sufficiency of the evidence to support his conviction.[1]

Under legal sufficiency review, we determine
whether, after viewing all the evidence in the light most favorable to the
verdict, any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Curry
v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing Jackson
v. Virginia, 443
U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). 
We do not resolve any conflict of fact or assign credibility to the witnesses,
as this was the function of the trier of fact.  See Dewberry
v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999); see also Adelman
v. State, 828
S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson
v. State, 819
S.W.2d 839, 843 (Tex. Crim. App. 1991).  Inconsistencies in the
evidence are resolved in favor of the verdict.  Curry, 30 S.W.3d at 406; Matson, 819 S.W.2d at 843.

Dixie Dean Willis, Jr., Archie’s
co-defendant, testified
that Archie wanted to steal drugs and money from the victim, Anthony Williams. 
Willis testified that Archie was in possession of a .12-gauge shotgun and
planned to distract Williams while Willis went inside to take the items. 
Archie promised to shoot Williams if he “gets tripping.”  Archie led the way to
Williams’s home.  Willis walked to the back of the house.  He suddenly heard a
gunshot.  He began running and Archie followed.

A few days later, Officer Jason Moore
attempted to initiate a traffic stop of a maroon Buick.  The driver fled on
foot.  The vehicle belonged to Archie’s girlfriend.  Jessica James testified
that she overheard Archie tell a group of men that he “just canceled a guy in
Huntsville through a window” because “he was moving in on my turf.”  Willis’s
girlfriend testified that he had confessed that he and Archie killed someone. 
She and her roommate had found the shotgun hidden in a closet in their home. 
Per Archie’s instructions, Willis buried the shotgun.

Viewing the evidence in the light
most favorable to the verdict, we conclude that the jury could have found,
beyond a reasonable doubt, that Archie committed the offense of murder.  See
Curry, 30 S.W.3d at 406; see
also Jackson, 443 U.S. at 318-19, 99 S. Ct. at
2789.  The evidence is legally sufficient to support Archie’s
conviction.

COMMENT ON FAILURE TO TESTIFY

            In issue one, Archie
contends that the trial court abused its discretion by denying his motion for
mistrial after the District Attorney commented on his failure to testify.

During closing arguments at the
guilt/innocence phase of trial, the District Attorney reminded the jury about a
note in which Archie stated that he heard Williams’s girlfriend scream on the
night of the offense.

DISTRICT
aTTORNEY: But the only
person who heard her scream, the only person who said she screamed was Trent
Archie…Do you still hear it Trent? Do you still hear her screaming? How do you
know she screamed?

 

Defense Counsel: Your Honor, I object.  I have to move
for a mistrial. 

 

DISTRICT
aTTORNEY: Because you were
there that night.

 

Trial Court: Approach the bench.

 

Defense Counsel:  Judge, I move for a mistrial.  It’s
an improper jury argument.

 

Trial Court: Sustained.

 

Defense Counsel:  I’m going to ask that you -- in front
of the jury, instruct Mr. Weeks to not ever -- to refrain from ever --

 

Trial Court:  You can’t ask him questions.

 

DISTRICT
aTTORNEY:  I didn’t.  I’m
making argument.

 

Trial Court: You can’t do that.

 

DISTRICT
aTTORNEY:  Judge, I’ve done
it before.

 

The trial court sustained the objection and
ordered the jury to disregard the argument, but denied Archie’s motion for
mistrial.  The trial court further instructed the District Attorney not to
engage in the argument again.

At a hearing on Archie’s motion for new
trial, defense counsel testified that, when making the complained of argument,
the prosecutor turned towards the defense table, pointed, stepped towards
Archie, and raised his voice.  The district attorney has never challenged the
accuracy of this testimony or the description of the events that occurred at
trial.

Improper Comment on Archie’s Failure to
Testify

 

“A comment on an accused’s failure to
testify violates the accused’s state and federal constitutional privileges
against self-incrimination.”  Smith
v. State, 65 S.W.3d 332, 339 (Tex. App.—Waco 2001, no pet.).  A comment on a defendant’s failure to testify arises
where “the language used was manifestly
intended or was of such a character that the jury would
necessarily and naturally take it as a comment on the defendant’s failure to testify.” 
Cruz
v. State, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007).

The State argues that the prosecutor’s
argument was merely a rhetorical question intended to respond to Archie’s
attempts to distance himself from the offense and discredit Willis.  We
disagree.

Even
a rhetorical question can become a comment on a failure to testify when coupled
with the lack of an explanation.  See Wolfe v. State, 917
S.W.2d 270, 280 (Tex. Crim. App. 1996).  In Bird
v. State, 527 S.W.2d 891 (Tex. Crim. App. 1975), during
closing arguments at the guilt stage of trial, the prosecutor looked
at Bird and said, “Jerry Joe Bird is a machinist and well capable of
manufacturing such a thing [a gun silencer].  And if he didn't manufacture
it, where did you get it.”  Bird, 527
S.W.2d at 893.  In Hicks v. State, 525
S.W.2d 177 (Tex. Crim. App. 1975), the prosecutor stood
behind Hicks, raised his voice, looked at Hicks, and said, “But there is
somebody that we haven't heard from in this case.  And I think you all know who
it is.” 
Hicks, 525
S.W.2d at 178-79.  In both cases, the
prosecutor’s argument, combined with physical actions, “was of
such a character that the jury would naturally and necessarily take it to be a
comment on the appellant’s failure to testify.”  Bird, 527
S.W.2d at 894-95; see Hicks, 525 S.W.2d at 180.

We
conclude that the District Attorney’s argument in this case, coupled with his physical
actions, was of “such a character that the jury would naturally and necessarily
take it to be a comment on [Archie’s] failure to testify.”  Bird, 527
S.W.2d at
894-95; see Hicks, 525 S.W.2d at 180.

 

Abuse
of Discretion

Because the trial court sustained
Archie’s objection and granted his request for an instruction to disregard, the
“only adverse ruling - and thus the only occasion for making a mistake - was
the trial court’s denial of the motion for mistrial.”  Hawkins v. State, 135 S.W.3d 72, 76-77 (Tex.
Crim. App. 2004).  Thus, “the proper issue is whether the refusal to
grant the mistrial was an abuse of discretion.”[2] 
Id. at 77; see Archie
v. State, 221 S.W.3d
695, 699-700 (Tex. Crim. App. 2007). 
We consider the: (1) severity of the misconduct (the magnitude of the prejudicial
effect of the prosecutor’s remarks); (2) measures adopted to cure the
misconduct (the efficacy of any cautionary instruction by the judge); and (3) certainty
of conviction absent the misconduct (the strength of the evidence supporting
the conviction).  Archie, 221 S.W.3d at 700; see Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim.
App. 1998).

“Prejudice is clearly the touchstone of
the first factor.”  Hawkins, 135 S.W.3d at 77.  In Brown v. State, 814 S.W.2d 477 (Tex. App.—Dallas 1991,
pet. ref’d), the prosecutor improperly commented on Brown’s failure to testify
by arguing, “Well, we
don't know what he [] sounds like when he talks.”  Brown,
814 S.W.2d at 478-79.  The Dallas
Court held that the comment “tainted the guilt-innocence phase” and “improperly
directed the jury’s attention to Brown’s invocation of his right not to
testify.”  Id. at 480.  The natural and necessary implications of the
prosecutor’s comments include (1) disrupting the jury’s orderly evaluation of
the evidence, (2) causing prejudice to the jury’s decision-making, and (3)
denying Brown’s right to a fair and impartial trial.  Id.  The District Attorney’s argument in this
case was highly prejudicial for the same reasons.

The trial court did, however, instruct
the jury to disregard the argument and included curative instructions in its
jury charge.  In Campbell v. State, 900 S.W.2d 763 (Tex App.—Waco 1995, no
pet.), the prosecutor commented on Campbell’s failure to testify by arguing “Everything puts this man in possession
of this check.  Explained?   Yes, it's explained.  He hadn’t explained it,
but we’ll explain it.”  Campbell, 900 S.W.2d at 766.  The trial court instructed the
jury that:

The law does not require a defendant to
prove his innocence or produce any evidence at all.  The presumption of
innocence alone is sufficient to acquit the defendant unless the jurors are
satisfied beyond a reasonable doubt of the defendant’s guilt after careful and
impartial consideration of all evidence in the case.  The prosecution has the
burden of proving the defendant guilty and it must do so by proving each and
every element of the offense charged beyond a reasonable doubt and if it fails
to do so, you must acquit the defendant.  

 

Id. at 769.  Before voir dire, the trial court instructed the
panel that any “comments made by the attorneys would not be considered evidence.” 
Id.  “[W]hen the court read the instructions to the jury before they
left to deliberate, the court instructed the jurors only to consider evidence
that had actually been admitted in their deliberations.”  Id.  This
Court held that these instructions adequately mitigated the harm caused by the
improper comment.  See id.

The trial court’s instructions in this
case are virtually identical to those in Campbell.  In addition, the
jury charge contains the following instruction:

The United States and Texas
Constitutions provide that a defendant may elect to not testify in his own
behalf if he chooses.  If the defendant has elected to not testify, you are
instructed that you cannot and must not refer to or allude [to] that fact
during your deliberations or take it into consideration for any purpose
whatsoever as a circumstance against him.

 

Nevertheless, “[m]istrial is the
appropriate remedy when…the objectionable events ‘are so emotionally
inflammatory that curative instructions are not likely to prevent the jury from
being unfairly prejudiced against the defendant.’”  Young v. State, 137 S.W.3d 65, 71 (Tex. Crim. App.
2004).  The District
Attorney called attention to the absence of evidence that Archie alone could provide. 
See Patrick v.
State, 906 S.W.2d 481,
491 (Tex. Crim. App. 1995) (“A
remark that calls attention to the absence of evidence which only the defendant
could supply will result in reversal.”).  The trial court’s curative
instructions were not likely to have prevented Archie from being improperly
prejudiced by the District Attorney’s argument.

Additionally, the evidence in this case
is not so strong that Archie would necessarily have been convicted absent the
District Attorney’s improper argument.  See Archie, 221 S.W.3d at 700. 
Willis was the only witness to the offense, but his credibility had been
impeached.  Willis admitted that he lies a lot and lied to the police about the
murder.  On cross-examination, defense counsel asked, “You’ve lied to the
police 27 different times about 27 different events, is that correct?”  Willis
responded, “Yes, sir.”  He admitted that he was capable of making up stories
and would do so to cover for himself.  Other than Willis’s testimony, the
record contains no other direct evidence establishing that Archie shot Anthony Williams
with a firearm as alleged in the indictment and the indirect evidence, while
significant, was not overwhelming.  The prejudice stemming from the District
Attorney’s improper argument is thus emphasized by the nature of the State’s
evidence.

Accordingly, we conclude that the trial
court abused its discretion by denying Archie’s motion for mistrial.  We
sustain issue one and need not address Archie’s remaining issues.  See Tex. R. App. P. 47.1.  We reverse
Archie’s conviction and remand this cause to the trial court for further
proceedings consistent with this opinion.

 

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Reversed and
remanded

Opinion
delivered and filed December 16, 2009

Publish

[CRPM]









[1]               We first address Archie’s
legal sufficiency challenge because it would afford him the greatest relief if
sustained.  See Nickerson
v. State, 69 S.W.3d
661, 668 (Tex. App.—Waco 2002 pet. ref’d); see also Hernandez v.
State, 268 S.W.3d 176, 178 (Tex. App.—Corpus Christi 2008, no pet.).





[2]               Although the parties address
harmless error analysis, the issue before us is not whether the error from the
prosecutor’s improper argument was harmless.  See Hawkins v. State, 135 S.W.3d 72, 76-77 (Tex.
Crim. App. 2004); see also Archie v. State,
221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007).